UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICK BOWERSMITH,**

      **Plaintiff,**

  v.

**ASPHALT MATERIALS, INC.,**

      **Defendant.**

:

:

:

Case No. 2:22-cv-02073
Judge Sarah D. Morrison
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

Rick Bowersmith filed suit against his former employer, Asphalt Materials, Inc. ("AMI"), alleging wrongful termination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 (Count I), the Americans with Disabilities Act ("ADA"), 42 U.S.C.§ 12101 (Count III), and Ohio's ADEA and ADA counterpart, Ohio Rev. Code § 4112.02 (Counts II and IV). This matter is before the Court on AMI's Motion for Summary Judgment. (ECF Nos. 22, 23.)

Bowersmith does not oppose summary judgment on his disability-based discrimination claims. (Resp., ECF No. 26, PAGEID # 604.) Therefore, the Motion is **GRANTED** on Counts III and IV.

For the reasons set forth below, the Motion is also **GRANTED** on Counts I and II.

I.     STATEMENT OF FACTS

From 2014 until 2021, Mr. Bowersmith was a Plant Operator I at AMI's Edison, Ohio location. (Bowersmith Depo. ECF No. 21-1, PAGEID # 146; LaRue Depo., ECF No. 21-2, PAGEID # 190.) Hired at 53 years old, Bowersmith was significantly older than others who worked at the Edison plant. (Bowersmith Aff., ECF No. 26-1, ¶¶ 2, 4.) When he was first hired, Bowersmith's supervisor Cory LaRue remarked that, if it were up to him, he would not have hired someone so old. (Bowersmith Depo., at 147.) LaRue subsequently made crass comments about Bowersmith's age, among other things, calling him a "toothless old man." (*Id.*) Bowersmith's peers also teased him about his age, but he said this was "all in fun" and "just guys kidding around, having fun." (Bowersmith Depo., at 147–47.)

Bowersmith did not always see eye to eye with his coworkers, particularly when it came to cleanliness. According to Bowersmith, most of his coworkers were too messy and needed constant reminders to clean up after themselves. (*Id.* at 152.) His frustration with the constant mess in shared workspaces boiled over on June 2, 2021. Intending to send a message that it was time to clean up, Bowersmith wrote "oink" on the office calendar and traced "oink, oink" in the grease that built up on his coworker Kodie Daughriety's locker. (*Id.* at 152–53; *see also* Investigation Report, ECF No. 25-1, PAGEID # 398–408.) Daughriety reported Bowersmith's actions to AMI's ethics integrity hotline. (Pamperin Depo., ECF No. 21-3, PAGEID # 265; Hotline Report, ECF No. 25-1, PAGEID # 412.)

2

AMI's human resources business partner Sarah Murrell investigated Daughriety's report. (Murrell Depo., ECF No. 21-4, PAGEID # 302, 308; Pamperin Depo., at 265) Murrell interviewed witnesses and photographed the locker and calendar. Most of the employees she interviewed were not bothered by Bowersmith's message, but Daughriety was offended. (Murrell Depo., at 311–12, 316–17; Investigation Report, ECF No. 25-1.) Daughriety told Murrell that this was not the first time he felt harassed by Bowersmith. (Murrell Depo., at 311–12; Investigation Report, at 398.) He said that Bowersmith previously called him a "fat-ass" and often made jabs at him for being from Knox County, Ohio. (Murrell Depo., at 311–12.) When interviewed by Murrell, Bowersmith denied calling Daughriety a fat-ass but otherwise confirmed that much of what Daughriety said was true. (Bowersmith Depo., at 152–53; Murrell Depo., at 317.) Bowersmith said that he wrote "oink" on Daughriety's locker because he was tired of cleaning up after him, adding that he left similar messages on other coworkers' greasy lockers in the past. (Bowersmith Depo., at 315.)

Based on the information collected during her investigation, Murrell determined that Bowersmith violated AMI's Anti-Harassment Policy, which prohibited "verbal or physical conduct that. . . [h]as the purpose or effect of creating an intimidating, hostile or offensive work environment." (Anti-Harassment Policy, ECF No. 23-1, ¶ 2) The Policy states that:

> Because it is difficult to predict when conduct or comments might be "unwelcome" or perceived as offensive, employees should avoid all such

> conduct and behave in a professional manner at all times. [AMI] prohibits inappropriate behavior regardless of whether anyone has complained about the inappropriate behavior, and regardless of whether the person engaging in the inappropriate behavior intended for it to be offensive. This policy also prohibits inappropriate behavior which was intended only as a joke or was not supposed to be seen or overheard by others.

(*Id.*) Policy violations could be met with any of the following disciplinary responses: "training, referral to counseling and/or disciplinary action such as warning, reprimand, withholding of a promotion or pay increase, reassignment, temporary suspension without pay or termination, or termination of employment, as [AMI] believes appropriate under the circumstances." (*Id.* at ¶ 7.)

Murrell believed that Bowersmith's pattern of behavior warranted immediate termination. (Murrell Depo., at 319.) Murrell shared her findings and recommendation with her supervisor Libby Pamperin, who agreed. (Murrell Depo., at 310; Pamperin Depo., ECF No. 251–52.) Pamperin, in turn, communicated the results of Murrell's investigation and their disciplinary recommendation to Executive Vice President Chris McGee, In-House Counsel Liz Larner, and Chief of Talent Kierstin Janik. (*Id.* at 251–52, 265–67.) It is unclear whether Pamperin made the final decision to terminate Bowersmith or whether it was a committee decision by Pamperin, McGee, Larner, and Janik. (Motion, ECF No. 23, PAGEID # 375–796 (Pamperin decided without objection from her superiors); Reply, ECF No. 27, PAGEID # 333 (decision made by committee).) Either way, Bowersmith was terminated on June 7, 2021.

In the year that followed his termination, AMI hired three new employees, all of whom were more than 10 years younger than Bowersmith. (LaRue Depo., ECF No. 21-2, PAGEID # 203; Defense Counsel Email, ECF No. 26-6.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita*

5

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

### III. ANALYSIS

The ADEA prohibits an employer from discharging an individual "because of such individual's age." 29 U.S.C. § 623(a)(1). Section 4112.14 of the Ohio Revised Code provides that no employer shall "discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job." Ohio Rev.Code Ann. § 4112.14(A). The burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817 (1973) and later refined in *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256–59, 101 S.Ct. 1089, 1095–97, 67 L.Ed.2d 207 (1981) is used to analyze claims of age discrimination under the ADEA and Ohio law. *See Campbell v. Int'l Paper Co.,* 138 Fed. Appx. 794, 796 (6th Cir. 2005) ("The same test applies to both the plaintiffs' ADEA and their Ohio age-discrimination claims.").

Absent direct evidence of discrimination, a plaintiff must first establish his prima facie case. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282–83 (6th Cir. 2012). To establish a prima facie case, the plaintiff must prove by a preponderance of the evidence that (1) he was at least 40 years old at the time of the alleged discrimination; (2) he experienced an adverse employment action; (3) he was

6

otherwise qualified for the position; and (4) circumstances supporting an inference of discrimination. *Burzynski v. Cohen,* 264 F.3d 611, 621–622 (6th Cir. 2001) (citing *Barnett v. Dep't of Veterans Affairs,* 153 F.3d 338, 341 (6th Cir. 1998)). With regard to the fourth element, a plaintiff can demonstrate that he was replaced by a person outside the protected class or, in a disparate treatment case, that he was treated differently than similarly situated individuals. *Policastro v. Nw. Airlines, Inc.,* 297 F.3d 535 (6th Cir. 2002). If a prima facie case is established, the burden of production shifts to the defendant to articulate a nondiscriminatory reason for its action. If the defendant states such a reason, "the plaintiff must then demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination." *Burzynski,* 264 F.3d at 621–622.

This three-part inquiry establishes an order for the presentation of proof in employment discrimination cases and shifts the burden of production between litigants. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011). However, at all times, the ultimate burden of persuasion remains on the plaintiff to demonstrate that age was the "but-for" cause of their employer's adverse action. *Id.* (citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 129 S.Ct. 2343 (2009)). On a motion for summary judgment, the Court "considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

The parties agree that Mr. Bowersmith has established his prima facie case by showing that he was replaced by younger employees, so the Court will first consider whether AMI has provided a legitimate nondiscriminatory reason for terminating Bowersmith.

### A. AMI had a legitimate, nondiscriminatory reason for terminating Bowersmith.

AMI has met its burden by showing that, following an investigation, Bowersmith was found to have violated the Anti-Harassment Policy—an infraction for which termination was among the potential consequences. (Pamperin Depo., at 251–52, 265–67; *see also* Anti-Harassment Policy, ECF No. 23-1, ¶¶ 2, 6, 7.)

### B. Bowersmith has not demonstrated that AMI's proffered reason was pretextual.

Bowersmith can demonstrate AMI's reason for terminating him was pretextual by showing (1) it had no basis in fact; (2) it did not actually motivate his termination; or (3) it was insufficient to motivate his termination. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Romans v. Mich. Dep't of Hum. Servs.*, 668 F.3d 826, 839 (6th Cir. 2012)). This is not an exhaustive list of ways he may prove pretext, but these three categories are a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Id.*

To avoid summary judgment, Bowersmith must produce sufficient evidence from which a jury could reasonably reject AMI's explanation of why it fired him.

*Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). The evidence must suggest that AMI acted for discriminatory reasons—not simply reveal "a dispute over the facts upon which the discharge was based." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).

Bowersmith has three arguments for why AMI's stated reason for terminating him is pretext for age discrimination.

### 1. Bowersmith has failed to create a jury question on whether his termination lacked basis in fact.

First, Bowersmith argues that AMI's stated reason for his termination lacks basis in fact. (ECF No. 26, PAGEID # 603.) Although Bowersmith admits to much of the underlying conduct, he argues that he did not violate the Anti-Harassment Policy because many of his coworkers were not offended his actions. (Response, ECF No. 26, PAGEID # 595.) He further argues that Murrell conducted a "shoddy" investigation with predetermined results. (*Id.*)

The Court applies the "honest belief" rule when assessing an employer's termination decisions, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied 'on the particularized facts that

9

were before it at the time the decision was made.'" *Id.* (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

AMI's decision to terminate Bowersmith for violation of the Anti-Harassment Policy was informed by Murrell's investigation, which included what she learned from interviewing Bowersmith, Daughriety, and others. Upon review and consideration of this information, AMI reasonably formed an honest belief that Bowersmith had a pattern of violating the Anti-Harassment Policy. Bowersmith makes much of the fact that Murrell did not give Pamperin her handwritten notes before the decision to terminate him was made, but this is inconsequential given that Murrell communicated the same information verbally. (Resp., ECF No. 26, PAGEID # 598; Murrell Depo., at 318.) There is no evidence that the result of the investigation was predetermined.

Although Bowersmith may have weighed the evidence from the investigation differently and reached the opposite conclusion, his disagreement is not evidence that AMI's reason for terminating him had no basis in fact.

### 2. Bowersmith has not shown that his Policy violation was insufficient to motivate his termination.

Second, Bowersmith argues that, even if he violated the Anti-Harassment Policy, his conduct was insufficient to motivate his termination because younger employees were not terminated for similar policy violations. (ECF No. 26, PAGEID # 604.) Under this method of establishing pretext, Bowersmith must show that significantly younger employees were not fired, even though they were similarly

situated to him in all relevant respects. *See Gunn v. Senior Servs. of N. Kentucky*, 632 F. App'x 839, 848 (6th Cir. 2015) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000)); *Grosjean v. First Energy Corp.*, 349 F.3d 332 (6th Cir. 2003) (significantly younger requirement). To be similarly situated, "the individuals with whom the [Bowersmith] seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) Although exact correlation is not required, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects." *Smith,* 220 F.3d at 762 (quotations omitted).

Bowersmith points to two comparators: Sarah Clark and Tonya Healey.

### a. The Court will assume Clark and Healy are significantly younger than Bowersmith.

Beyond Bowersmith's statement that "all of his coworkers" were "significantly younger" than him, there is little to no evidence of Clark's and Healey's ages. (ECF No. 26, PAGEID # 599–600.) But Bowersmith represents that it is "undisputed" that his comparators are significantly younger than him and AMI does not refute this representation. So, the Court will assume that Clark and Healey are significantly younger than Bowersmith.

11

### b. Bowersmith has not shown that Clark and Healey are similarly situated to him.

Bowersmith has failed to demonstrate that Clark and Healey are similar to him in all relevant respects.

There appear to be some similarities between Clark and Bowersmith, specifically that Clark was investigated and found to have violated the Anti-Harassment Policy for giving unwanted hugs. (Pamperin Depo., at 255–56.) But Clark was not terminated for her Policy violation. (*Id.* at 255.) Instead, Clark was advised and coached on what sort of conduct was appropriate in the workplace. (*Id.* at 255–56.) Nevertheless, Bowersmith fails to submit any evidence regarding Clark's position with AMI, who her supervisors were, whether her termination was ever considered or recommended, who made the decision about her discipline, and on what grounds that decision was made. Without such evidence, a jury could not reasonably conclude that AMI's different treatment of Clark and Bowersmith is explainable by age discrimination as opposed to some other reason.

The same is true for Healey. Bowersmith's evidence is that she shared confidential information about other employees' mental health conditions. (Murrell Depo., at 307.) After investigating the matter, Murrell believed that Healey's actions warranted termination, but Healey was not terminated. (*Id.*) Instead, she was suspended and given a final written warning. (*Id.*) Much like with Clark, Bowersmith submits no evidence regarding Healey's position with AMI, who her supervisors were, what was learned in the investigation into her conduct, whether

12

her termination was recommended to decisionmakers, who made the final disciplinary decision, and on what grounds that decision was made. Moreover, it is unclear whether Healey's conduct violated the Anti-Harassment Policy or some other policy. In light of these deficiencies, Bowersmith has failed to prove that he and Healey are similarly situated.

As such, evidence that Healey and Clark were not terminated is not proof of pretext.

### 3. Bowersmith fails to show that his Policy violation did not actually motivate his termination.

Finally, Bowersmith argues that his evidence that LaRue made ageist comments about him creates a jury question regarding the actual motivation for his termination.

Ageist comments and slurs "may well betray a bias that older workers are less valuable or competent." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004). In evaluating ageist statements, "courts must carefully evaluate factors affecting the statement's probative value, such as the declarant's position in the employer's hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action, as well as whether the statement buttresses other evidence of pretext." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009) (cleaned up). Comments made by non-decisionmakers or made long before the challenged action "tend to add 'color' to the employer's decision-making processes," but must be paired

13

with other evidence to establish pretext. *Id.*; *see also Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) ("[S]tatements by non-decision makers, or statements by decision makers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden of demonstrating animus.").

Here, any probative value of the alleged statements by LaRue is lessened by the fact that LaRue was not involved in the decision to terminate Bowersmith; there is no evidence that LaRue influenced that decision. Thus, LaRue's statements—while offensive and unprofessional—are not enough to create a genuine dispute over whether AMI's reason for terminating Bowersmith is pretext for age discrimination.

Accordingly, AMI is entitled to judgment as a matter of law on Bowersmith's age discrimination claims.

## IV.     CONCLUSION

For the reasons set forth above, AMI's Motion for Summary Judgment is **GRANTED**. (ECF Nos. 22, 23).

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**